**Marcus W. RANKIN, Plaintiff,**

v.

**Wayne HOWARD, et ux., et al., Defendants.**

**No. Civ. 77–790 PHX CLH.**

United States District Court, D. Arizona.

Dec. 9, 1981.

Robert C. Moest, Barry A. Fisher, Fisher & Moest, Los Angeles, Cal., Jeffrey Leon-

ard, Daughton, Feinstein and Wilson, Phoenix, Ariz., for non-party witness Mose Durst.

Randolph J. Haines, Lewis & Roca, Phoenix, Ariz., and Richard Ben-Veniste, Melrod, Redman & Gartlan, Washington, D. C., for plaintiff.

Albert R. Vermeire, Monbleau, Ve Meire & Turley, P. C., Phoenix, Ariz., Gilbert F. Diekman, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants Howard and Trauscht.

Bruce E. Miller, Deputy Atty. Gen., Topeka, Kan., for James J. Zeller.

Arthur L. Hirsch, Tucson, Ariz., for defendants Freedom of Thought Foundation, Joseph Alexander, Sr., Esther Alexander and Gary Scharff.

David J. Karasek, Robinson, Karasek & Hendrickson, Phoenix, Ariz., for defendants Gary and Marjorie Conklin.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Dr. Mose Durst, who is not a party to this action, was served a subpoena in Los Angeles, California to attend the taking of his deposition. He moved the United States District Court for the Central District of California for an order quashing the subpoena and for a protective order. His motions were heard by The Honorable William P. Gray, Jr. of that court. Judge Gray ruled that Dr. Durst had been properly served, but he denied the motion for protective order, ruling that the issues if raised would be more appropriately determined by this court. The motion for protective order was then presented to this court and referred to Magistrate Richard C. Gormley for determination. After hearing, Magistrate Gormley denied the motion. Dr. Durst has moved for reconsideration of Magistrate Gormley's order pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons hereinafter stated, the magistrate's order will be set aside and the motion for protective order will be granted.

■ Plaintiff brought this action pursuant to 42 U.S.C. § 1985(3). He alleges that because he was an adherent of the Unification Church, the defendants conspired to deprive him of his civil rights and in furtherance of the conspiracy committed several acts including false imprisonment, assault, invasion of privacy, wrongful civil proceedings and abuse of process. The statute affords protection to one who has suffered injuries motivated by invidiously discriminatory animus toward the members of a religious group. *Baer v. Baer*, 450 F.Supp. 481 (ND Cal.1978). See also *Marlowe v. Fischer Body*, 489 F.2d 1057 (6th Cir. 1973); *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971).

■ The defendants Howard and Trauscht contend that the Unification Church is not a *bona fide* religious group but that its primary and motivating purposes are economic and political gain, so that members of the church are not entitled to the protection of Section 1985(3). They seek to take the deposition of Dr. Durst, who is the president of the church, "to pursue all available and legal lines of discovery to adequately rebut the inference that the cult is indeed a bona fide religion". Defendants' Reply to Plaintiff's Response in Support of Motion of Non-Party Witness Mose Durst for Protective Order at 3. That pursuit is implicitly forbidden by the First Amendment.

■ Whether there is a commercial side to a religious organization's activities does not alter its religious character for purposes of the First Amendment. *Int'l. Soc. for Krishna Consciousness v. State Fair of Texas*, 461 F.Supp. 719 (ND Tex.1978). If political activity were the primary purpose of the Unification Church, the plaintiff might still be entitled to relief under Section 1985(3). See *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973). However, that begs the question.[1]

---

1. Although not critical to a decision in this matter, it is worth noting that other courts have recognized the Unification Church to be a religion for purposes of 42 U.S.C. § 1985(3).

978

The real issue is whether the processes of an American court can be used to examine the *bona fides* of a religious group. In *United States v. Ballard*, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) the Supreme Court held that the First Amendment bars the testing in court of the truth or falsity of religious beliefs. Speaking for the majority, Justice Douglas wrote:

> "... (F)reedom of thought, which includes freedom of religious belief, is basic in a society of free men .... It embraces the right to maintain theories of life and of death and of the hereafter which are rank heresy to followers of the orthodox faiths. Heresy trials are foreign to our Constitution. Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs .... The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When the triers of fact undertake that task, they enter a forbidden domain ...." 322 U.S. at 86–87, 64 S.Ct. at 886–87, 88 L.Ed. at 1153–54.

This reasoning why the truths of the belief of a religious group cannot be tested applies equally to why there can be no inquiry as to whether a religious group is *bona fide.*

IT IS ORDERED that the deposition of Dr. Durst not be taken.

See *Ward v. Connor,* 657 F.2d 45 (4th Cir. 1981); *Baer v. Baer,* 450 F.Supp. 481 (N.D.Cal. 1978).