**Thomas Joseph WARD, Plaintiff,**

v.

**Ken CONNOR, Sr., Arlene Doe, Ken Connor, Jr., Phil Doe, John Doe, Robert S. Mandelkorn, Eugenia Mandelkorn, Richard Roe, Mary Roe, Lyle Mosier, Judy Kimes, Reverend Dean, Alan Tate Wood, Dee Anderson, Marty Berg, Father Marty O'Rourke, Ted Morgan, Rose Morgan, Father Martin Conroy, Jeff Yeslein, Jack McConeghy, Betty McConeghy, Jo Munchouer, and Sister Maria Victoria, Defendants.**

Civ. A. No. 79–1071–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

April 18, 1980.

Jones, Blechman, Woltz & Kelly, Newport News, Va., for McConeghys and Alan Tate Wood.

White, Reynolds, Smith & Winters, Norfolk, Va., for Mosier.

Thomas James Ward, Mary Ward, Marty Ward and Joan Conroy, all pro se.

Furniss, Davis & Rashkind, Norfolk, Va., for Robert and Eugenia Mandelkorn.

Shames & Byrum, Chesapeake, Va., for Father Marty O'Rourke.

## MEMORANDUM OPINION

MacKENZIE, Chief Judge.

This case comes before this Court on defendants' Rule 12(b) motion to dismiss. Defendants principally challenge the existence of subject matter jurisdiction, and contend that the Court should dismiss plaintiff's complaint in its entirety. Defendants additionally assert that even if the Court finds jurisdiction over the instant matter, several of the state claims set forth in plaintiff's complaint are not cognizable under Virginia law and must be dismissed.

### I.

### Background

Thomas Joseph Ward, a member of the Unification Church, claims that it was his membership in the church that prompted his parents and other relatives to conspire to "de-program" Ward of his religious beliefs. Ward alleges that following a Thanksgiving visit to see his sister in Virginia Beach, he was kidnapped and held captive for 35 days. All the while, Ward maintains, his captors subjected him to a barrage of verbal and physical abuse in their vain attempt to "save" Ward from his devotion to the teachings of the Reverend Moon.

In his complaint, filed with this Court on November 27, 1979, Ward named 33 persons as defendants, and set forth the following causes of action:

John Edwards Harrison and Jack L. Wuerker, Alexandria, Va., for plaintiff.

Peter W. Rowe, Norfolk, Va., for Ken Connor, Sr.

Count I—a private conspiracy to deprive plaintiff of his civil rights under 42 U.S.C. § 1985(c) [until 1976, codified as 42 U.S.C. § 1985(3)];

Count II—statutory conspiracy;

Count III—assault;

Count IV—battery;

Count V—false imprisonment;

Count VI—invasion of privacy;

Count VII—intentional infliction of emotional distress; and

Count VIII—grand larceny.

Plaintiff named all 33 defendants as partners in the alleged conspiracy of Count I, and a lesser number of defendants as parties to Counts II–VIII.

Moreover, plaintiff alleged two bases of subject matter jurisdiction for his claims: (1) federal jurisdiction pursuant to § 1985(c) over Count I and over Counts II–VIII by virtue of the doctrine of pendent jurisdiction; and (2) in the event that Count I was dismissed, diversity jurisdiction over the remaining state claims in Counts II–VIII.

In lieu of filing an answer, defendants Robert and Eugenia Mandelkorn have moved to dismiss plaintiff's suit. Defendants first attack the alleged jurisdictional bases, arguing that 42 U.S.C. § 1985(c) does not afford plaintiff a remedy for injuries resulting from a *private* conspiracy, and that plaintiff's naming of "John Doe" defendants destroys diversity jurisdiction under 28 U.S.C. § 1332. Defendants also insist that whatever the outcome of the jurisdictional question, Counts II, VI and VIII fail to state cognizable claims under Virginia law.

## II.

### Discussion

#### A. *Subject Matter Jurisdiction*

1. *Jurisdiction Pursuant to 42 U.S.C. 1985(c)*

■ The focal point of defendants' motion to dismiss is plaintiff's contention (Count I) that he has a cause of action against all defendants under 42 U.S.C. § 1985(c). Plaintiff, a Caucasian, readily admits that the alleged conspiracy to deprogram him was purely private in nature, involving no state action. Thus, we must decide whether a white male like plaintiff can invoke 42 U.S.C. § 1985(c) to sue private persons who allegedly deprived him of constitutional rights.

42 U.S.C. § 1985(c) provides as follows:

If two or more persons in any State or territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

On its face, § 1985(c) would appear to afford a remedy against *all* conspiracies abridging constitutional rights. Yet, the United States Supreme Court has carefully restricted the scope of § 1985(c), mindful of the "constitutional shoals that would lie in the path of interpreting [§ 1985(c)] as a general federal tort law." *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

In *Griffin v. Breckenridge, supra*, the Court abandoned the long-standing state action requirement to give certain black plaintiffs a remedy in a § 1985(c) suit brought against private persons who had conspired to assault plaintiffs on a Mississippi highway. Plaintiffs alleged that their attackers had been motivated by racial bias: in the mistaken belief that plaintiffs were members of a Civil Rights group, defendants had acted in concert to intimidate them.

While holding for plaintiffs, the *Griffin* Court imposed two conditions, in addition to the express requirements of § 1985(c), to limit the availability of § 1985(c) to litigants alleging private conspiracies. First, the Court required that plaintiffs show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798. Second, the Court required that plaintiffs cite constitutional authority to justify extending § 1985(c) to cover the private conspiracy alleged. *Id.* at 103, 91 S.Ct. at 1798.

The *Griffin* court found these two conditions easily met in the case before it. The conspirators in *Griffin* clearly were motivated by racial prejudice when they attacked plaintiffs. Then too, extending § 1985(c) to reach the conspiracy in *Griffin* was fully sanctioned by the Constitution. The Thirteenth Amendment empowered Congress to identify the "badges and incidents of slavery" and to act to eradicate such vestiges of slavery, whether arising from a state or private source. *Id.* at 105, 91 S.Ct. at 1799. Moreover, Congress traditionally had been vested with authority to protect the right of interstate travel from private, as well as governmental interference. *Id.* at 106, 91 S.Ct. at 1800. As plaintiffs had alleged that they were deprived of the right to travel unimpeded on the public highway, § 1985(c) could surely be read to give plaintiffs relief from their assailants. *Id.*

In light of the interpretation given of § 1985(c) by the *Griffin* Court, plaintiff claims that the provision reaches the alleged private conspiracy in this case. According to plaintiff, defendants were motivated to conspire against him by their dislike for the Unification Church. Such religious bias, maintains plaintiff, satisfies the requirement for a showing of "class-based invidiously discriminatory animus." Furthermore, defendants allegedly seized plaintiff as he prepared to board a plane for a flight from Virginia to New York, thus depriving him of the right to travel interstate, a right Congress could protect from even private interference.

We recognize that several courts recently have recognized a cause of action under 42 U.S.C. § 1985(c) for plaintiffs who have been the victims of conspiracies motivated by religious bias. *See Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971); *Rankin v. Howard*, 457 F.Supp. 70 (D.Ariz. 1978); *Baer v. Baer*, 450 F.Supp. 481 (N.D. Cal.1978). Yet, we are persuaded, from a review of the better-reasoned decisions subsequent to *Griffin* refusing to find a 1985(c) claim under circumstances similar to those in this case, that § 1985(c) does not afford plaintiff a remedy in the instant case. *See Styn v. Styn*, No. 79–3468 (Feb. 7, 1980, N.D.Ill.) (slip opinion); *Weiss v. Patrick*, 453 F.Supp. 717 (D.R.I.), aff'd., 588 F.2d 818 (1st Cir. 1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979).

In part, we reject plaintiff's § 1985(c) claim because we are not at all convinced that § 1985(c) was ever intended to reach private conspiracies motivated by religious, rather than racial, prejudice. The *Griffin* Court expressly left open the question as to what kinds of class-based discriminatory animus would trigger application of § 1985(c). *Griffin v. Breckenridge*, 403 U.S. at 102 n.9, 91 S.Ct. at 1798 n.9. Thereafter, a federal court in this district construed the class-based animus requirement to include discrimination on the basis of "discrete, insular and immutable characteristics," (i. e. race, national origin, and sex). *Bellamy v. Mason's Stores, Inc.*, 368 F.Supp. 1025, 1028 (E.D.Va.1973), aff'd., 508 F.2d 504 (4th Cir. 1974). Applying the animus requirement, so defined, to this case, we do not find plaintiff's Unification Church membership to be the type of immutable characteristic necessitating the invoking of § 1985(c) relief. Unlike members of racial minorities, plaintiff here voluntarily joined the church and, presumably, could leave it if he so desired.

Moreover, assuming for a moment that religious bias satisfies the animus requirement of § 1985(c), such bias is obviously lacking. This is not a case where strangers

conspired to attack plaintiff simply because they found his religious beliefs intolerable. Rather, defendants in this matter are plaintiff's closest blood relatives, including his father and mother. It is readily apparent, therefore, that defendants were motivated to act, if at all, by their concern for the well-being of a loved one. Since a discriminatory motive is absent, there is no cognizable claim under 42 U.S.C. § 1985(c). *Styn v. Styn, supra*; *see also Weiss v. Patrick, supra.*

In addition, we are of the opinion that a restrictive approach to the animus requirement for § 1985(c) comports with the legislative history of the provision. Section 1985(c) was enacted in 1871 as part of the Reconstruction era civil rights legislation. Popularly known as the Ku Klux Klan Act, the statute was designed to provide a remedy for blacks who were the victims of Klan violence throughout the South, and who were without the protection of adequate state remedies. "The Class-Based Animus Requirements of 42 U.S.C. § 1985(c): A Suggested Approach," 64 Minn.L.Rev. 635, 635–36 (1980). Plaintiff in the present case is not the victim of systematic racial terrorism. Nor is he denied access to state-created remedies (notably, Counts II–VIII consist of state law claims). Consequently, we find that it would distort the purposes underlying § 1985(c) to apply the civil rights statute to the private conspiracy alleged in this case.

In addition, the Constitution does not authorize extending § 1985(c) to provide a civil remedy for the private conspiracy in the instant case. To be sure, plaintiff has alleged, *inter alia*, that he was deprived of the right to interstate travel when family and friends kidnapped him, and argues quite properly that § 1985(c) may be read to cover conduct impinging upon the right to unimpeded interstate travel. The gravamen of plaintiff's complaint, however, is not deprivation of the right to travel interstate, but rather interference with his First Amendment rights of freedom of religion and association. Such First Amendment rights do not support an interpretation of § 1985(c) extending the statute to reach private conduct. *See Bellamy v. Mason's Stores, Inc.*, 508 F.2d 504 (4th Cir. 1974). Rather, the First Amendment operates as a buffer against *governmental* intrusions upon a sphere of private conduct and belief. *Id.* at 507. Absent even a remote hint of state action in the conspiracy in question, § 1985(c) may not be construed to give plaintiff a federal mode of relief.

As plaintiff's § 1985(c) claim is wanting in both discriminatory animus and constitutional authorization, Count I must be dismissed, and with it those defendants named solely as defendants to the conspiracy claim set forth in Count I.

### 2. Jurisdiction Pursuant to 28 U.S.C. § 1332.

In an attempt to find jurisdiction for the remaining Counts (II–VIII), plaintiff alternatively contends that the state claims are properly before this Court pursuant to diversity jurisdiction. On the face of his complaint, plaintiff has fully complied with the requisites of 28 U.S.C. § 1332: he has alleged complete diversity of citizenship of the parties, contending that while he is a citizen of New York, each of the defendants is a citizen of a state other than New York. In addition, plaintiff has claimed an amount in controversy exceeding $10,000.00.

In bringing suit, however, plaintiff included five defendants whose first and/or last names are unknown. Defendants here contend that plaintiff's naming of "John Doe" defendants destroys diversity jurisdiction automatically, since the state citizenship of such "John Doe" defendants is at best a matter of speculation.

Unpersuaded by defendants' argument, we do not find that the Court has been divested of diversity jurisdiction by the mere presence of unnamed parties to this suit. Rather, we will allow plaintiff the opportunity to proceed with his claim in federal court, pending further developments that might disrupt 28 U.S.C. § 1332 jurisdiction.

As a result, we will withhold any final decision on the diversity jurisdiction until the time for serving defendants has come to an end. Pursuant to an order of the Court dated January 21, 1980, plaintiff was given an additional 90 days in which to obtain service of process over defendants. At present, a few days yet remain in plaintiff's extension. If, at the end of the allotted period, plaintiff has identified and served a "Doe" defendant with process, and it seems apparent that the defendant, like plaintiff, is a citizen of New York, we will dismiss the suit altogether for want of subject matter jurisdiction. Otherwise, plaintiff may continue with his lawsuit in this court.

## B. *The Challenged State Claims*

Defendants challenge Counts II, VI and VIII as containing allegations that fail to state claims cognizable under Virginia state law. We proceed to deal with each of the challenged counts below.

### 1. *Count II*

Plaintiff alleges in Count II that various defendants conspired to represent plaintiff as being of unsound mind in an effort to obtain a conservatorship over him, and in so doing, harmed his reputation. Plaintiff contends that such conduct on the part of defendants violated Va.Code § 18.2–499 and, consequently, that defendants are liable to him for the damage caused his personal reputation. Defendants, on the other hand, maintain that the cited statutory provisions only deal with harm to business reputation, not in issue in the present case.

Va.Code § 18.2–499(a) provides as follows:

Any two or more persons, who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully and maliciously injuring another in his reputation, trade, business or profession . . . shall be jointly and severally guilty of a class three misdemeanor. . . .

Va.Code § 18.2–500, moreover, provides a civil remedy for "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499 . . . . ."

Several factors compel us to hold that no cause of action will lie under § 18.2–500 where, as in this case, plaintiff alleges harm to his personal reputation and not to any business interest. For one, "reputation," as employed in both §§ 18.2–499 and 500, must be read in its proper context. In each provision, meaning of the term is shaped by the references to "trade, profession or business" that follow it. Moreover, in setting forth a partial explanation of what damages may be recovered under the section, § 18.2–500 refers to lost profits as a recoverable item. Clearly, then, the focus of §§ 18.2–499 and 500 is upon conspiracies resulting in business-related damages.

Recently, another federal court has dealt with the civil remedy afforded by § 18.2–500, albeit in a case involving a question of the applicable statute of limitations. In *Federated Graphics Companies, Inc. v. Napotnik*, 424 F.Supp. 291, 293 (E.D.Va.1976), the Court described § 18.2–500 as a "statutory action . . . for wrongful conduct directed to the business." Thus, as plaintiff complains only of defendants' misconduct adversely affecting his personal reputation, he does not have a remedy available under § 18.2–500. Count II of plaintiff's complaint must be dismissed.

### 2. *Count VI*

Plaintiff has alleged generally that certain defendants invaded his privacy when they tried to "de-program" him. Defendants contend that Virginia law recognizes no common law right to sue for invasion of privacy, and thus, that Count VI should be dismissed.

A number of jurisdictions now recognize four categories of actionable invasions of privacy: (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity unreasonably placing another in a false light before the public. Restatement (Second) of Torts, § 652A (1977). In the present case, plain-

tiff apparently alleges a common-law claim for invasion of privacy falling under category (1) of the above-listed categories. In effect, plaintiff claims that defendants interfered with his personal right of seclusion, and should be liable in damages for such an intrusion.

At the present time, however, Virginia law does not recognize the common-law right of action that plaintiff asserts in Count VI. To be sure, the Virginia General Assembly has created a statutory cause of action to persons who are the victims of a category (2) loss of privacy. Va.Code § 8.01–40 provides that "[a]ny person whose name, portrait, or picture is used without having first obtained the written consent of such person" may sue in damages. The Virginia Supreme Court, however, has not enlarged this statutory right, or in any way indicated its desire to fashion a common-law remedy for unwarranted interferences with the right of privacy.

Consequently, it would be inappropriate for this Court, exercising diversity jurisdiction, to create a cause of action for the invasion of privacy where state law recognizes no such right. *See Evans v. Sturgill,* 430 F.Supp. 1209 (W.D.Va.1977). Count VI must also be dismissed from this lawsuit.

### 3. *Count VIII*

Plaintiff claims in Count VIII that because defendants took personal property valued at more than $100 from him and thus committed grand larceny in violation of Virginia law, Va.Code § 18.2–95, they also should be liable for damages under a correlative tort theory of grand larceny. Plaintiff finds such a tort theory in the language of Va.Code § 8.01–221, providing that:

> [a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation.

Contending that no cause of action for grand larceny exists in Virginia, defendants move for the Rule 12(b)(6) dismissal of Count VIII.

■ We fully agree with defendants that a tort theory of grand larceny is not cognizable under Virginia law. Va.Code § 8.01–221 creates no new causes of action as derivatives of criminal misconduct. Rather, the statute merely preserves any existing civil remedies available to a litigant suing a wrongdoer who has previously been the subject of criminal penalties for his misconduct. *Tyler v. Western Union Tel. Co.,* 54 F. 634 (W.D.Va.1893).

■ We refuse to dismiss Count VIII, however, because plaintiff may avail himself of several common law theories in order to obtain compensation for the alleged wrongful taking of his property. Plaintiff seeks the return of his personal property as well as damages. He may pursue such relief under theories of replevin (claiming damages for the unlawful detention of his property) and conversion (requesting the return of the stolen items). Therefore, defendants' motion to dismiss Count VIII must be denied.

### III

### *Conclusion*

In conclusion, we grant defendants' Rule 12(b)(6) motion with respect to three counts of plaintiff's eight-count complaint. Count I, wherein plaintiff alleges a private conspiracy to deprive him of his civil rights and seeks relief under 42 U.S.C. § 1985(c), is fatally defective because plaintiff has failed to allege a sufficient class-based animus for the conspiracy, and because there is no constitutional authorization for reading § 1985(c) to reach the instant case. Count II is similarly defective because Va.Code § 18.2–500 provides no civil relief for harm done to plaintiff's personal reputation. Finally, Count VI must be dismissed because Virginia law recognizes no common law right to sue for invasion of privacy.

We deny defendants' motion to dismiss the entire complaint at this time for want of subject matter jurisdiction, however, determining that diversity jurisdiction may well support the bringing of plaintiff's state claims in federal court. We postpone any

final decision on the diversity question until the time for serving defendants with process has elapsed and the citizenship of any served "John Doe" defendants can be ascertained.

Thus, defendants' motion to dismiss with respect to Counts I, II and VI is GRANTED. Defendants' motion to dismiss with respect to the remaining counts (II, IV, V, VII and VIII) is DENIED. In addition, those persons served with process but named as defendants only with respect to Count I are DISMISSED as parties to this suit: Thomas James Ward, Mary Ward, Maureen Winifred Ward, Marty Ward, Lawrence V. Conroy, Joan Conroy, John Conroy, Mary Conroy and Mary Carol Williams.