**Donald R. MORGAN, Plaintiff,**

v.

**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, Defendant.**

**Agnes MORGAN, Plaintiff,**

v.

**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, Defendant.**

**Civ. A. Nos. 82–0282–R, 82–0799–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

March 16, 1983.

478

Dennis P. Brumberg, Gordon H. Shapiro, Lutins, Shapiro, Albert & Kurtin, Roanoke, Va., for plaintiffs.

William R. Rakes, Karen McCutcheon, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION and ORDER

TURK, Chief Judge.

Plaintiffs Donald R. Morgan (Mr. Morgan) and Agnes Morgan (Mrs. Morgan), citizens of Virginia, have brought these actions under the court's diversity jurisdiction, *see* 28 U.S.C. § 1332, seeking compensatory and punitive damages from defendant American Family Life Assurance Company of Columbus (AFLA), a Georgia corporation. Mr. Morgan's complaint contains three counts: Count I alleges breach of insurance contract; Count II alleges bad faith failure to pay insurance benefits resulting in mental and emotional distress; and Count III alleges violation of the Virginia Unfair Trade Practices Act. *See* Va.Code § 38.1–49 *et seq.* (1981 Repl.Vol.). Mrs. Morgan alleges bad faith failure to pay insurance benefits resulting in mental and emotional distress. These actions are now before the court on defendant's motions to dismiss for failure to state a claim, or alternatively, for summary judgment, as to Mrs. Morgan's complaint and Counts II and III of Mr. Morgan's complaint. For the purpose of ruling on defendant's motions, the court consolidates these actions because they involve a common question of law. *See* Fed.R.Civ.P. 42(a). For the reasons set forth below, the court denies the motions to dismiss Mrs. Morgan's complaint and Counts II and III of Mr. Morgan's complaint.

## I. FACTUAL BACKGROUND

On August 15, 1973, AFLA issued cancer insurance policy number R–918300 to Mr. Morgan. The policy provided for the payment of certain hospital and medical benefits for cancer to Mr. Morgan and his family in the event that one of them contracted cancer. While the policy was in effect, the plaintiffs' son, a covered dependent, contracted leukemia.

Plaintiffs subsequently incurred certain charges for treatment of their son's leukemia. Specifically, Mr. Morgan has submitted claims totaling $99,091 which he alleges were usual and customary charges for blood and plasma for their son's treatment. Plaintiffs contend that these claims are covered under paragraph 8 of the cancer insurance policy which provides:

> BLOOD AND PLASMA BENEFIT: The Company will pay the usual and customary charges for blood and blood plasma not to exceed a lifetime maximum of THREE HUNDRED ($300.00) DOLLARS for all cancers except leukemia, in which case the Company will pay the usual and customary charges for such products.

AFLA's position is that although paragraph 8 does apply to charges for blood itself, it does not cover charges for administrative, processing, servicing, or similar fees even though such fees may be covered under other provisions of the policy. Thus, this lawsuit initially arose out of the parties' inability to determine which, if any, of the hospital's total charges were for blood itself, and which were for processing fees.

On May 3, 1982, Mr. Morgan filed Civil Action No. 82–0282 alleging breach of contract by AFLA in failing to make payments

under paragraph 8 of the insurance policy and seeking approximately $99,091 in compensatory damages.

Mrs. Morgan subsequently filed Civil Action No. 82–0799 alleging that AFLA issued the cancer insurance policy in bad faith and with no intention of performing the promises contained therein. She further alleged that AFLA's dispute of and failure to pay her husband's claim of $99,091 evidenced bad faith and willful, malicious, and reckless disregard of her rights which resulted in her mental and emotional distress. As relief, she seeks $100,000 compensatory damages for her mental and emotional distress and $1,000,000 punitive damages in addition to her attorney's fees pursuant to Va.Code § 38.1–32.1 (1982 Supp.).

Shortly thereafter, Mr. Morgan filed an amended complaint wherein, in addition to his original contract claim, he alleged that AFLA issued the policy in bad faith with no intention to perform thereunder and that he suffered mental and emotional distress due to AFLA's bad faith and malicious refusal to pay the entire amount of his contract claim. He further alleged that AFLA's actions were in violation of Virginia's Unfair Trade Practices Act. See Va. Code § 38.1–49 et seq. (1981 Repl.Vol.). Like his wife, Mr. Morgan seeks $100,000 compensatory damages, $1,000,000 punitive damages, and his attorney's fees.

AFLA then filed motions to dismiss or, alternatively, for summary judgment, as to Mrs. Morgan's complaint and Counts II and III of Mr. Morgan's amended complaint. The parties have submitted briefs in support of their respective positions and argument was heard in chambers on January 7, 1983. Having considered all the materials submitted herein, defendant's motions are now ready for disposition.

## II. LEGAL ANALYSIS

AFLA has moved to dismiss Mrs. Morgan's complaint and Count II of Mr. Morgan's amended complaint on the grounds that Virginia law does not recognize a cause of action under any theory of law such as would allow a party to a contract or a third-party beneficiary to a contract to recover compensatory or punitive damages for the intentional infliction of emotional distress resulting from the breach of that contract. Plaintiffs oppose the motions to dismiss with the argument that Virginia does recognize the tort of intentional infliction of emotional distress and that their theory of recovery is merely a logical extension of that tort to conduct which also constitutes a breach of contract.

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must take all allegations in the complaint as admitted, and the pleading should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); Tahir Erk v. Glenn L. Martin Co., 116 F.2d 865, 870 (4th Cir.1941). In addition, the motions in these diversity actions must be decided by applying the law of the forum. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937).

The Supreme Court of Virginia has not, however, addressed the question whether an insurer's alleged bad faith failure to pay insurance benefits can be the basis of an action which entitles an insured or third-party beneficiary to recover compensatory damages for emotional distress and punitive damages. Accordingly, the court must attempt to predict how the state supreme court would resolve this question of first impression in Virginia. GAF Corp. v. County School Board of Washington County, Virginia, 629 F.2d 981 (4th Cir.1980); Harris v. Aluminum Company of America, 550 F.Supp. 1024, 1026 (W.D.Va.1982).

Damages for emotional distress are generally not recoverable in Virginia "unless they result directly from tortiously caused physical injury." Naccash v. Burger, 223 Va. 406, 416, 290 S.E.2d 825, 830 (1982). Virginia does recognize the tort of intentional infliction of emotional distress as an exception to this general rule, how-

ever. *Id.; Womack v. Eldridge,* 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). In addition, Virginia follows the rule that punitive damages are not recoverable for breach of contract unless the conduct constituting the breach amounts to "criminal indifference" or "an independent willful tort, due to malicious, wanton or oppressive behavior by the breaching party." *Matney v. First Protection Life Ins. Co.,* 73 F.R.D. 696, 697 (W.D.Va.1977); *Wright v. Everett,* 197 Va. 608, 616, 90 S.E.2d 855, 860 (1956); *see generally* Restatement (Second) of Contracts § 355 (1981).

Despite plaintiffs' failure to specifically allege intentional infliction of emotional distress, their counsel argues in opposition to defendant's motions that plaintiffs are indeed relying on that tort theory. AFLA counters this by asserting that Virginia does not recognize an independent tort cause of action for intentional infliction of emotional distress by breach of contract. This assertion is without merit. Virginia need not recognize an independent tort cause of action for infliction of emotional distress by breach of contract because the conduct constituting the breach of contract may also amount to an independent tort. Thus, the relevant inquiry is whether the allegations in the complaints are sufficient to state a cause of action for intentional infliction of emotional distress under Virginia law.

■ Although the Supreme Court of Virginia has never decided the issue, some courts have held that an insured may bring a tort action for intentional infliction of emotional distress arising out of an insurer's bad faith refusal to pay insurance benefits. *See Green v. State Farm Fire and Cas. Co.,* 667 F.2d 22 (9th Cir.1982) (Oregon law); *Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1 (7th Cir.1972) (Illinois law); *Fletcher v. Western Nat. Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970); *see also Hixon v. State Compensation Fund,* 115 Ariz. 392, 565 P.2d 898 (Ariz.Ct.App.1977) (by implication from court's ruling that allegations of issuance of defective notice of claim status terminating benefits to worker

did not amount to outrageous conduct required to state a claim for intentional infliction of emotional distress); *Manolis v. International Life Ins. Co.,* 83 A.D.2d 784, 443 N.Y.S.2d 461 (N.Y.App.Div.1981) (by implication from court's ruling that allegations of disability insurer's termination of payments after receiving report from its own physician that insured was not totally disabled failed to set forth conduct by insurer sufficiently outrageous to establish cause of action for intentional infliction of emotional distress); *but see Mazzula v. Monarch Life Ins. Co.,* 487 F.Supp. 1299 (E.D.Pa.1980) (under Pennsylvania law, insurer's bad faith failure to pay insured's claim fails to state claim for intentional infliction of emotional distress); *Whitten v. American Mutual Liability Ins. Co.,* 468 F.Supp. 470, 478–79 (D.S.C.1977) (dictum that allegations of insurer's bad faith failure to pay worker's compensation benefits did not amount to outrageous conduct), *aff'd,* 594 F.2d 860 (4th Cir.1979). In light of this authority and the fact that Virginia already recognizes the tort, the court concludes that in an appropriate case Virginia would apply the tort of intentional infliction of emotional distress to a bad faith refusal to pay insurance benefits, even though that same conduct also constitutes a breach of contract.

■ Virginia requires four elements to state a cause of action for intentional infliction of emotional distress, namely, "that the tort is intentional or reckless, that the tortfeasor's conduct is outrageous and intolerable, that the wrongful conduct and the emotional distress are causally connected, and that the emotional distress is severe." *Naccash v. Burger,* 223 Va. at 415–16, 290 S.E.2d at 830. In the cases *sub judice,* plaintiffs allege that AFLA issued the policy in question with no intention of performing or interpreting the promises therein in good faith. Plaintiffs further allege that AFLA's refusal to pay benefits due under the policy was willful and malicious and done with bad faith and reckless disregard of plaintiffs' rights, and that as results of AFLA's conduct, they suffered mental and emotional distress. Thus, plaintiffs have

clearly alleged the first, third, and fourth elements. The court has some concern, however, that allegations of bad faith failure to pay insurance benefits, without more, may be insufficient to show the extreme and outrageous conduct required to prevail under this theory of recovery. *See* Restatement (Second) of Torts § 46 comment d (1965) ("It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' ...."). Nevertheless, the general allegations of bad faith and malice suggest that facts might be proven which would justify recovery for emotional distress resulting from outrageous conduct. Accordingly, the court denies the motions to dismiss Mrs. Morgan's complaint and Count II of Mr. Morgan's complaint.

In addition, viewed in the light most favorable to Mr. Morgan, the allegations in Count II of his complaint can be construed to state a claim against AFLA for the tort of bad faith failure to pay an insured's claim. Many courts have held that this tort arises out of the implied duty of an insurer to deal fairly and act in good faith in processing the claims of its insureds. *See Craft v. Economy Fire & Casualty Co.,* 572 F.2d 565 (7th Cir.1978) (Indiana law); *National Semiconductor v. Allendale Mut. Ins. Co.,* 549 F.Supp. 1195, 1200 (D.Conn.1982) (Connecticut law); *Trimper v. Nationwide Ins. Co.,* 540 F.Supp. 1188, 1192–95 (D.S.C. 1982) (South Carolina law); *Phillips v. Aetna Life Ins. Co.,* 473 F.Supp. 984 (D.Vt. 1979) (Vermont law); *Christian v. American Home Assur. Co.,* 577 P.2d 899 (Okl. 1978); *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313 (R.I.1980); *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979); *see generally* 47 A.L. R.3d 314 (1973). Under this theory, a successful plaintiff may recover both compensatory damages for emotional distress, *see Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, and punitive damages for willful, wanton, or reckless conduct. *See Trimper v. Nationwide Ins. Co.,* 540 F.Supp. at 1195–96. Therefore, Count II of Mr. Morgan's complaint may also state a tort claim for bad faith for which relief can be granted if Virginia recognizes such a theory of recovery.

Although the court's research reveals no Virginia authority which either rejects or accepts a cause of action in tort for the wrongful failure to settle a first-party insurance claim, in *Aetna Casualty & Surety Co. v. Price,* 206 Va. 749, 146 S.E.2d 220 (1966), the Supreme Court of Virginia indicated that an insured may recover more than the policy amount for a liability insurer's bad faith refusal to settle below the policy amount a third-party claim against its insured which results in the third-party obtaining a judgment against the insured greater than the policy amount. In so doing, the court emphasized the "relationship of confidence and trust ... created between the insurer and the insured which imposes upon the insurer the duty to deal fairly with the insured in the handling and disposition of any claim covered by the policy." 206 Va. at 761, 146 S.E.2d at 227–28. In other words, the court imposed a duty on a liability insurer to exercise good faith in the settlement of third-party claims against its insured because of the special, almost fiduciary, relationship between the insurer and its insured. Various courts have rejected recognition of the tort of first-party bad faith on the grounds that an insurance company's denial of liability under a first-party insurance claim is not analogous to an insurer's refusal to settle within policy limits because in the former case there is no breach of a fiduciary duty. *See Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 922, 611 P.2d 149, 155 (1980); *Farris v. United States Fidelity & Guaranty Co.,* 284 Or. 453, 587 P.2d 1015 (1978).

Other courts, however, have found the "rationale which imposes a duty on an insurance company to exercise good faith in the negotiation and settlement of third-party claims [to be] of equal but separate importance when an insured seeks payment of legitimate claims from his own insurance carrier." *Trimper,* 540 F.Supp. at 1193. Furthermore, every contract imposes upon

each party a duty of good faith and fair dealing in its performance and its enforcement. Restatement (Second) of Contracts § 205 (1981). Moreover, the Virginia General Assembly has implicitly recognized the quasi-fiduciary nature of the relationship between an insurance company and its insureds by promulgating a broad range of statutory provisions in favor of the latter. *See* Va.Code § 38.1–32.1 (1982 Supp.) (insurer's bad faith denial of coverage or failure to make payments under policy entitles insured to recover costs and attorney's fees from insured arising out of a civil case to determine coverage or insurer's liability under policy); Va.Code § 38.1–52.1 (misrepresentation of policy terms or benefits constitutes an unfair or deceptive trade practice); –52.9 (unfair claim settlement practices); –55 thru –56 (permits Commissioner of Insurance to levy fines or suspension against insurer for unfair trade practices). Indeed, Va.Code § 38.1–52.9(6) imposes a duty of good faith on insurers to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear. Some courts have "viewed this kind of sweeping regulatory scheme as a persuasive reason for recognizing first-party actions for bad-faith rejection of an insurance claim." *Trimper*, 540 F.Supp. at 1194; *see Christian v. American Home Assur. Co., supra; Phillips v. Aetna Life, supra.* But other courts have interpreted statutes imposing penalties or attorney's fees on insurance companies for bad faith rejections of claims as demonstrating legislative intent to provide the exclusive civil remedy for such conduct and preempt a common-law remedy. *See Spencer v. Aetna Life & Cas. Ins. Co., supra; Farris v. United States Fidelity & Guaranty Co., supra.* This court does not hold at this time that the Supreme Court of Virginia would recognize a cause of action in tort for bad faith failure to settle a first-party insurance claim. Nevertheless, a court should be especially reluctant to dismiss a complaint that asserts a novel theory of liability. 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1357 at 603 (1969). Accordingly, even if plaintiffs' allegations of bad faith

refusal to pay insurance benefits were not sufficient to state a claim for intentional infliction of emotional distress, the court would still deny the motion to dismiss as to Count II of Mr. Morgan's complaint.

Defendant also moves to dismiss Count III of Mr. Morgan's complaint on the grounds that no private cause of action is given under the statute and, therefore, that he lacks standing to sue under Virginia's Unfair Trade Practices Act, Va.Code § 38.-1–49 *et seq.* (1981 Repl.Vol.). Although plaintiff admits that the Act does not specifically provide for a private cause of action, he contends that one may arise by implication.

Va.Code § 38.1–49 *et seq.* is based upon model legislation proposed by the National Association of Insurance Commissioners. At least forty-five states have adopted versions of this model act. Comment, *Insurers and Third-Party Claimants: The Limits of Duty,* 48 U.Chi.L.Rev. 125, 146 n. 75 (1981). Virginia's Unfair Trade Practices Act prohibits certain insurance practices, including bad faith failure to settle claims for which liability has become reasonably clear. *See* Va.Code § 38.1–52.9(6) (1981 Repl.Vol.). Furthermore, the Commissioner of Insurance is empowered to investigate violations of the Act and to impose sanctions on persons who commit a prohibited trade practice. · Va.Code §§ 38.1–53—55 (1981 Repl. Vol.). Specifically, the Commissioner is authorized to issue cease and desist orders, order the payment of monetary penalties, and order the suspension or revocation of an insurance company's license. Va.Code §§ 38.1–55 –56 (1981 Repl.Vol.). The Act does not expressly authorize private suits to obtain relief for unfair trade practices.

The appropriate test to determine whether a state statute gives rise by implication to a private cause of action is as follows:

(1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of

484

action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

*Hurley v. Allied Chemical Corp.,* 262 S.E.2d 757, 763 (W.Va.1980); *see also Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Two courts that recently applied this test to similar versions of the model act reached different results as to whether the statutes give rise by implication to private causes of action. *Compare Seeman v. Liberty Mutual Ins. Co.,* 322 N.W.2d 35 (Iowa 1982) (no private cause of action implied from I.C.A. § 507B.4(9)(f)) *with Jenkins v. J.C. Penney Cas. Ins. Co.,* 280 S.E.2d 252 (W.Va.1981) (private cause of action implied from W.Va.Code § 33–11–4(9)). No recorded Virginia case has decided this issue. Therefore, this court must predict whether the Supreme Court of Virginia would judicially imply a private cause of action from Va.Code § 38.1–49 *et seq.*

■ The supreme courts of West Virginia and Iowa both agreed that their respective unfair trade practices statutes passed the first, third, and fourth prongs of the modified *Cort* test. *See* 322 N.W.2d 41–43; 280 S.E.2d 255–58. Similarly, this court concludes that Mr. Morgan is a member of the class of persons for whose special benefit the statute was enacted; that a private cause of action would be consistent with the underlying purpose of the Act to prohibit unfair insurance practices; and that a private cause of action would not intrude into an area regulated by the federal government.

The state supreme courts disagreed, however, as to whether their legislatures intended a private cause of action. The court in *Seeman* held that the Iowa legislature implicitly intended the administrative remedies to be the exclusive means of enforcing the statute. 322 N.W.2d at 42. The Iowa court interpreted a section which gave the insurance commissioner authority to promulgate rules to identify the practices prohibited by the statute "but expressly provide[d] that such 'rules shall not enlarge

upon or extend the provisions of such sections,' [as indicating that] the legislature . . . intended only to invest the insurance commissioner with administrative powers and that the chapter not be expanded in the exercise of administrative or judicial discretion." *Id.* The Supreme Court of Appeals of West Virginia, on the other hand, determined from the West Virginia statute itself that a private cause of action was intended. 280 S.E.2d at 257–58. That court did so on the basis that although there was no legislative history, the statute contained a strong policy declaration against unfair insurance practices. In addition, the West Virginia court concluded that the statute's administrative remedies were not intended to be exclusive because (1) such provide no direct relief for an injured party; (2) a subsection of the statute indicates that the administrative provisions do not "absolve any person affected by such order or hearing from any other liability, penalty or forfeiture under the law;" and (3) another West Virginia statute expressly provides "that even though a statute contains provision for imposition of a penalty, the penalty does not preclude the right of a person to seek damages for violation of the statute." *Id.* at 257.

Virginia also has a statute that provides, in essence, that the imposition of a statutory penalty does not prohibit a person from recovering damages sustained by reason of the violation, unless the penalty is expressly in lieu of such damages. Va.Code § 8.01–221 (1977 Repl.Vol.). Although this section itself does not create any new rights of action but instead preserves any existing right of action that an injured person may have against a wrongdoer who has previously been the subject of statutory penalties for his misconduct, *Ward v. Connor,* 495 F.Supp. 434, 440 (E.D.Va.1980), *rev'd on other grounds,* 657 F.2d 45 (4th Cir.1981); *Tyler v. Western Union Tel. Co.,* 54 F. 634 (W.D.Va.1893); *Hortenstein v. Virginia-Carolina Ry.,* 102 Va. 914, 47 S.E. 996 (1904), it is consistent with the idea that the provision for a statutory penalty does not foreclose a person's right to recover damages for the same statutory violation unless

the statute so provides. Moreover, the Act itself provides that "[n]o order of the Commission under this article shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this Commonwealth." Va. Code § 38.1–57.1 (1981 Repl.Vol.). Therefore, this court rejects the notion that the commissioner's administrative powers were intended to be the exclusive remedy for violations of the Act.

The question still remains, however, whether the Virginia General Assembly intended an implied right of action to be another remedy for unfair insurance practices. Unfortunately, there is no legislative history to aid the court in this determination. Nevertheless, like the West Virginia court, this court interprets the statute's declaration of purpose, which provides in part that "this article is to regulate trade practices in the business of insurance ... by defining all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined," Va.Code § 38.1–49 (1981 Repl.Vol.), as a strong indication of legislative intent to create a private cause of action. Moreover, where, as ·here, "a statute.has granted a class of persons certain rights and there is no statutory language indicating that the administrative remedies provided in the statute are considered exclusive, the United States Supreme Court has found an implied private cause of action." 280 S.E.2d at 257. Indeed, the Court "has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute." *Cannon v. University of Chicago,* 441 U.S. 677, 707 n. 41, 99 S.Ct. 1946, 1963 n. 41, 60 L.Ed.2d 560 (1979).

Therefore, the court holds that the Supreme Court of Virginia would follow the reasoning in *Jenkins* and judicially imply a private cause of action in favor of insureds from the Virginia Unfair Trade Practices

Act. Accordingly, defendant's motion to dismiss Count III of Mr. Morgan's complaint is denied.

Defendant also moves in the alternative for summary judgment as to these same claims. Unlike a Rule 12(b)(6) motion, which limits the court's inquiry to the adequacy of the content of the complaint, a motion for summary judgment involves a determination from the pleadings, depositions, answers to interrogatories, and affidavits whether there is a genuine issue of fact. *See* Fed.R.Civ.P. 56(c). Defendant has presented no documentary evidence in support of its motions for summary judgment, however. Accordingly, the court takes defendant's motions for summary judgment under advisement.

In summary, the court denies defendant's motions to dismiss Mrs. Morgan's complaint and Counts II and III of Mr. Morgan's amended complaint, and takes defendant's motions for summary judgement under advisement.

IT IS SO ORDERED.