## CIRCUIT COURT OF STAFFORD COUNTY

Meccia et al.

v.

Pioneer Life Ins. Co.
and Robert F. Berryman

June 5, 1987

Case No. 259-86 and 239-86 (consolidated)

By JUDGE WILLIAM H. LEDBETTER, JR.

This case is before the court for rulings on several pre-trial motions, special pleas, and demurrers filed by the defendants.

Plaintiffs (collectively, "Meccia") have filed an eight-count amended motion for judgment against Pioneer Life Insurance Company of Illinois ("Pioneer") and its agent, Robert F. Berryman ("Berryman"), alleging, in essence, that Pioneer has refused to pay certain medical expenses incurred by Meccia for treatment of their son's birth defects as it was obliged to do under a policy of health insurance.

At the time Berryman, the sales agent, met with Meccia in May of 1985 to sell the coverage and take the application, Linda Meccia was eight months pregnant. There seems to be no dispute about Berryman's knowledge of this fact. In discovery depositions, he has conceded that the pregnancy was a topic of conversation at the meeting and

that coverage of the unborn child was discussed. (Maternity benefits were not considered.) Nevertheless, Question 4(h) of the application was answered "No." The question referred to medical advice or treatment in the past five years. Meccia says that they interpreted the question to pertain to illnesses and injuries, not to the pregnancy, and that such interpretation was reasonable especially in light of their conversations with Berryman specifically concerning the pregnancy and coverage for the unborn child.

Berryman has stated further in discovery depositions that he did not know that Pioneer would not write a policy for a pregnant applicant or an applicant whose spouse was pregnant. He denies ever receiving certain guidelines and regulations from Pioneer which apparently address this point with Pioneer's agents.

Meccia claims that shortly after the application was taken, the child was born with serious birth defects. When the rather substantial medical bills associated with these defects were submitted to Pioneer, Pioneer refused to pay them and rescinded the policy. By letter dated October 31, 1985, Pioneer notified Meccia of the rescission (although it subsequently kept the matter "under review" for several months without offering further explanation) and cited the misstatement in response to Question 4(h) of the application as its reason for the rescission.

### Present Status of the Case

Meccia's eight-count amended motion for judgment asserts the following causes of action:

Count 1. Negligence claim against Berryman.

Count 2. Claim of breach of oral contract against Pioneer and Berryman.

Count 3. Claim of breach of written contract against Pioneer.

Count 4. Claim of "bad faith refusal to pay" against Pioneer.

Count 5. Claim under the Virginia Unfair Trade Practices Act against Pioneer and Berryman.

Count 6. Claim of misrepresentation against Pioneer and Berryman.

Count 7. Claim of fraud against Pioneer and Berryman.

Count 8. "Negligent failure to train" claim against Pioneer.

In addition to the motions, pleas, and demurrers which are the focus of this opinion, the defendants have filed grounds of defense to the amended motion for judgment.

Pioneer has filed a cross claim against Berryman, and Berryman has answered.

Trial is set for December 17-18, 1987.

The following matters are now before the court for determination.

1. Pioneer's demurrer to Count IV of the amended motion for judgment.

2. Pioneer's and Berryman's demurrers to Count V of the amended motion for judgment.

3. Pioneer's demurrer to Count VIII of the amended motion for judgment.

4. Pioneer's and Berryman's special pleas of the statute of limitation to Count VI and Count VII of the amended motion for judgment.

5. Berryman's demurrer and motion to dismiss as to Pioneer's cross claim.

These matters will be discussed and disposed of in the same order in which they are listed above.

### Demurrer to Count IV

In Count IV of the amended motion for judgment, Meccia sets out a "separate and distinct cause of action" against Pioneer which Meccia labels "Tort of Bad Faith Refusal to Honor First Party Claim." In this count, Meccia asserts that Pioneer acted intentionally, willfully, and maliciously in its arbitrary and unreasonable refusal to pay the medical claims, and in committing several other enumerated wrongful acts, notwithstanding its "confidential relationship of trust" with the insureds.

A cause of action for bad faith in so-called *third party* insurance cases has received almost unanimous acceptance throughout the United States. Such a cause of action permits the insured to recover compensation for an excess judgment against him when the insurer, in bad faith, rejects a legitimate settlement offer within policy limits. Virginia is in accord. *Aetna Casualty & Surety Company v. Price*, 206 Va. 749 (1966).

Recently, the bad faith concept has been extended to so-called *first party* insurance cases, but not without sharp debate and a decided division of authority. Approximately two dozen states are said to recognize such a cause of action, in one form or another, in first party cases.

There are obvious distinctions between third party bad faith cases and first party bad faith cases. First, third party cases involve liability insurance whereas first party cases involve indemnity insurance. Second, the harm for which a remedy is fashioned by judicial recognition of the cause of action for bad faith in third party cases *does not exist in first party cases.* In the latter category of cases, the issue is not whether the insured will be exposed to damages in excess of policy limits by reason of the insurer's misconduct. Third, although it may be said that a relationship of confidence and trust exists in every contractual arrangement, the "confidence and trust" referred to in the third party cases arises from the insurer's right under the policy to investigate, negotiate, and settle claims of third parties against the insured, a delicate situation. In the third party context, the insured is wholly dependent upon the insurer to see that his best interests are protected in dealing with third party claims, an element not present in first party cases. Finally, the relief provided in third party cases, for the most part, is full judgment for foreseeable losses, i.e., consequential damages. The basic principle is reimbursement for foreseeable loss resulting from the insurer's breach of duty to settle within policy limits on a claim against the insured. The primary objective in first party cases is not recovery of consequential damages for direct loss, but recovery of exemplary or punitive damages in addition to the amount that can be recovered under a straightforward breach-of-contract claim.

Everyone agrees that Virginia has neither accepted nor rejected a cause of action for bad faith in first party cases.

In *Morgan v. American Family Life Assurance Company,* 559 F. Supp. 477 (W.D. Va. 1983), Judge Turk speculated that Virginia would recognize such a cause of action. The rationale of the decision is tied, in part, to the court's observation that Virginia does recognize the

tort of intentional infliction of emotional distress under certain circumstances, and that these tort causes of action have similar components and policy considerations. In the final analysis, however, *Morgan* expressly does not hold that Virginia would recognize a cause of action in tort for bad faith failure to pay a first party insurance claim. Nevertheless, inexplicably, the court denied the insurer's pre-trial motion to dismiss the claim.

In *A & E Supply Company, Inc. v. Nationwide Mutual Insurance Company*, 798 F.2d 669 (4th Cir. 1986), the Fourth Circuit Court took a different view, concluding that Virginia would not recognize such a cause of action founded in tort and permitting recovery of punitive damages.

There is no authority, by way of holdings, dicta or inferences, that would give one any degree of confidence that the Virginia Supreme Court would recognize a tort theory of recovery based on bad faith refusal in a first party insurance case.

In *Price*, the Court adopted "the rule imposing liability upon an insurer for an excess judgment against the insured for failure to settle within the policy limits, in proper cases." This case is properly cited for the proposition that Virginia recognizes a cause of action for bad faith in third party insurance cases. The Court's holding, however, is not expansive. The stated purpose of the rule is to compensate an insured where the insurer does not act in good faith in dealing with offers of compromise, "having both its own and the insured's interests in mind." Nothing in the Court's opinion hints at a possible extension of the rule beyond those cases (i.e., third-party insurance cases) to which the "salutary purpose behind the rule" specially applies.

Simply put, this is a contract case. As a general rule, damages for breach of contracts are limited to pecuniary loss. *Wright v. Everett*, 197 Va. 608 (1956). Exemplary, or punitive, damages are not recoverable even where the breaching party is guided by an evil or hateful motive. *Kamlar Corporation v. Haley*, 224 Va. 699 (1983). It is not surprising, then, as noted by Professor Prosser (quoted in *Kamlar*), that lawyers will make the effort "to turn every breach of contract into a tort."

The general rule that punitive damages are not allowed for breach of contract does not obtain in those exceptional

cases where the breach also amounts to an independent, willful tort. *Wright, supra*; *Goodstein v. Weinberg*, 219 Va. 105 (1978).

Virginia Code § 8.01-272 now expressly permits a joinder of counts in tort and contract. Thus, since the statutory change in 1977, lawyers do not have to "turn every breach of contract into a tort." Instead, a single pleading can allege an ex contractu action *and* an independent willful tort. Since the very object of the first party bad faith theory is an award of punitive damages, it is natural that an indemnity insurance contract case would be framed as an action ex contractu and, in a separate count, the insurer's bad faith refusal to pay would be asserted as an "independent, willful tort."

The analysis does not end, however, with a determination that the insured has complied with the pleading requirements of § 8.01-272 and *Kamlar* by having alleged an independent ex delicto action in a separate count. No matter how separate or independent the ex delicto allegations, if such allegations add up to a tort claim that is not recognized in Virginia, there can be no recovery upon it.

Because Virginia does not recognize a tort action of bad faith refusal to pay in first party indemnity insurance cases, as alleged in Count IV and as defined in the cases from other jurisdictions cited in Meccia's memorandum, Meccia cannot go forward on that claim.

This holding does not preclude recovery of consequential and/or punitive damages by an insured in an indemnity insurance contract case where an identifiable, cognizable independent tort is properly pleaded and proved. It may be, for instance, that Meccia can frame a clearly-delineated, cognizable "independent, willful tort" using some of the allegations contained in Count IV, without resorting to an unfounded reliance upon the broader theory of recovery known as bad faith. If such allegations state a tort cause of action recognized in the Commonwealth, they will withstand demurrer.

For the reasons given, Pioneer's demurrer to Count IV will be sustained, with leave for Meccia to amend if they be so advised.

*Demurrers to Count V*

In Count V of the amended motion for judgment, Meccia asserts a claim against Pioneer and Berryman under the provisions of Virginia Code § 38.1-49 et seq. (now Section 38.2-500 et seq.), the Virginia Unfair Trade Practices Act.

The question is whether such regulatory legislation carries with it an implied private right of action.

The original legislation was silent on this issue. In 1986, the Act was rewritten to specifically provide that "no violation of this Act shall of itself be deemed to create any cause of action in favor of any person other than the Commissioner [of Insurance] . . ." Virginia Code Section 38.2-510(B). However, since this case was commenced prior to the enactment of § 38.2-510(B), the original form of the Act controls.

Meccia argues that since the General Assembly decided to expressly exclude private actions by the 1986 revision, "it is logical to conclude that in its original form the statute impliedly authorized a private right of action."

In *Morgan, supra*, the U. S. District Court for the Western District of Virginia held that the Virginia General Assembly intended an implied private right of action in favor of insureds under the pre-1986 version of the Act. The court found its strongest indication of such legislative intent in the Act's declaration of purpose, or preamble. The court relief heavily upon a 1981 West Virginia decision which judicially implied a private right of action under similar legislation in that state.

*A & E Supply, supra*, reaches a different conclusion. The rationale and holding of that case are more persuasive.

The Virginia legislation is based on a model statute drafted by the National Association of Insurance Commissioners. The Act forbids various insurance practices and delegates regulatory powers to the State Corporation Commission. The Commission, acting largely through the Insurance Commissioner, may promulgate rules, conduct investigations, issue cease and desist orders, conduct hearings, and impose sanctions. The Act is a part of the insurance code which fills more than 400 pages.

As noted by the Fourth Circuit in *A & E Supply*, the delicate balance within the statutory complex:

would likely be disrupted by the introduction of . . . courts as decision-makers affecting only one dimension of interrelated insurance problems . . . . The discordant effects of independent--and often inexpert--supervision of unfair trade practices by the jury encourages acceptance of the explicit statutory remedy as the exclusive statutory remedy . . . . As one commentator has advised, "if the legislature has carefully chosen an enforcement mechanism to accomplish the legislative purpose by accommodating conflicting interests, the integrity of the overall statutory scheme requires restraint in implying private actions."

Most states that have adopted the model statute hold that it does not create a private right of action.

In Virginia, where the legislature has chosen an enforcement mechanism and regulatory scheme to accomplish an announced purpose, the judiciary will not add a regime of private lawsuits to the specified mode of executing such purpose, especially where the regulatory scheme is complex, the administrative mechanisms are in place, and there is nothing in the legislation itself that expressly authorizes or reasonably implies a private right of action.

Accordingly, the court is of the opinion that Count V does not state a cause of action upon which relief can be granted, and the demurrers to that count will be sustained.

### Demurrer to Count VIII

Count VIII is labelled "Negligent Failure to Train." In it, Meccia alleges that Berryman was acting within the scope of his agency relationship with Pioneer at all times relevant to the claim. Then, Meccia adds: "In the event that Pioneer is not legally responsible for the actions of its agent . . . any misrepresentations made by Berryman, whether intentional or unintentional, were made as a result of the negligent failure to train Berryman by Pioneer . . . ."

Pioneer has demurred, alleging that the allegations in Count VIII fail to state a claim upon which relief can be granted.

Once again, the court is invited to recognize a novel theory of recovery sounding in tort. Unlike the bad faith refusal in Count IV, however, the "negligent failure to train," as a separate and distinct tort, finds little or no support in the authorities. Meccia cites Section 315 of the Restatement of Torts (Second). That provision is not supportive of the proposition that "negligent failure to train" is a distinct cause of action. Instead, it defines the duty owed by a principal, or similar party, to control its agent or similarly situated party where a special relationship exists to justify the imposition of such duty. This court reads the section as simply clarifying one facet of the doctrine of respondeat superior under which a principal may be held vicariously liable for the acts of its agent. Similarly, *Robertson v. LeMaster*, 301 S.E.2d 563 (W. Va. 1983), also relied upon by Meccia, can be so construed. Although in *Robertson* the employee may not have been acting within the scope of his employment at the time of the accident, the West Virginia court seems to be clarifying, or extending, the duty of the principal toward third parties rather than creating a new cause of action.

In any event, *Robertson* rationale is inapposite here. Undeniably, Berryman committed the acts for which Pioneer can be held liable during "on-duty service," and within the scope of his agency, or not at all. It follows that Pioneer is either vicariously liable under the doctrine of respondeat superior for such alleged misconduct of Berryman, or it is not liable at all for the alleged acts of Berryman.

Therefore, Pioneer's demurrer to Count VIII will be sustained.

### Special Pleas of the Statute of Limitation

Pioneer and Berryman have filed special pleas of the statute of limitation to Counts VI and VII. In these counts, Meccia alleges that the defendants made numerous material misrepresentations "regarding the scope of coverage and insurability of Meccia."

An action for fraud is governed by the one-year statute of limitation in Virginia Code § 8.01-248. *Pigott v. Moran*, 231 Va. 76 (1986). (The parties agree that this statute controls both Count VI and Count VII, although Count VI is labeled "Tort of Misrepresentation.") The cause of action accrues "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Virginia Code § 8.01-249. The crucial question is the date on which the cause of action accrued.

In oral argument, Pioneer temporarily withdrew from the debate by conceding that there is not sufficient evidence before the court from which the accrual date can be determined at this point. Berryman has made no such concession and argues that Meccia's cause of action for fraud accrued, at the latest, on October 31, 1985.

On that date, Pioneer wrote to Meccia rescinding the policy and returning all premiums paid. (A copy of the letter is appended to Meccia's memorandum filed herein on May 15, 1987.) The letter is so clear and specific, Berryman asserts, that Meccia discovered the fraud upon receipt of the letter, and all other inquiries and correspondence were nothing more than attempts to confirm or verify the fraud. These verification efforts, Berryman says, do not extend the accrual date under the *Pigott* analysis.

Since the letter of October 31, 1985, is the pertinent discovery vehicle according to Berryman, what in fact did Meccia discover upon receipt of that letter? From the four corners of the document, Meccia learned that (1) Pioneer was rescinding the policy; (2) no claims would be honored; (3) the basis of the rescission was the alleged misstatement in response to Question 4(h); and (4) more specific reasons for the rescission would be provided upon request.

Can it be said at this point in the litigation, as a matter of law, that Meccia's awareness of these assertions by Pioneer constituted a discovery of fraud on the part of Berryman?

The court is not prepared, at least at this stage of the case, to make such a leap. In other words, on the record thus far developed, it cannot be said that Meccia's discovery of Pioneer's rescission of October

31, 1985, also amounted to discovery of Berryman's alleged fraud.

For the foregoing reasons, the pleas of the statute of limitation are overruled.

### Demurrer and Motion to Dismiss Cross Claim

On May 14, 1987, the court granted leave to Pioneer to file a cross claim against Berryman on the amended motion for judgment. Pioneer filed its cross claim on the same day. Berryman has filed a demurrer and, by letter dated June 2, 1987, has invited the court to rule on the demurrer without further hearing on the matter.

The cross claim prays for judgment for such amount, if any, as Meccia may recover against Pioneer. The cross claim is bottomed upon Berryman's duties of good faith, loyalty, and full disclosure owed to Pioneer by reason of an agreement between the parties dated November 14, 1984 (a copy of which is attached to the cross claim), and the business relationship between the parties. Berryman claims that these allegations are too imprecise and insufficient.

The court does not agree. The cross claim contains factual allegations asserting claims under the agreement, which is clearly an agency contract, and under "the law applicable to the business relationship," which clearly refers to the agency relationship between Pioneer and Berryman.

Berryman claims that Pioneer's allegations relating to an agency relationship are inconsistent with Pioneer's denial of agency in its grounds of defense. Such inconsistency, or alternative pleading, does not perforce give rise to the basis for a demurrer.

Berryman next contends that Pioneer's cross claim does not sufficiently identify "the applicable law" under which Berryman's alleged duties arise. As noted above, it is evident that the legal principles referred to in the cross claim are those principles applicable to the contract and to the agency relationship. In any event, affirmative pleadings are not demurrable on the basis that the legal principles underlying the action are not recited.

Pleadings are supposed to state the essential facts, not conclusions or legal principles; and the factual allegations must be sufficient to state a claim upon which, if proven to be true, relief can be granted. Brevity is encouraged. Rule 1:4. All sorts of discovery mechanisms are available to compel the party to amplify or particularize the claim.

Therefore, Berryman's demurrer to the cross claim filed by Pioneer will be overruled, with leave to Berryman to file an appropriate responsive pleading.

### Conclusion

Pioneer's demurrer to Count IV (bad faith refusal to pay first party claim), Pioneer's and Berryman's demurrers to Count V (Virginia Unfair Trade Practices Act), and Pioneer's demurrer to Count VIII (negligent failure to train) are sustained. Pioneer's and Berryman's pleas of the statute of limitations to Count VI and Count VII are overruled. Berryman's demurrer and motion to dismiss the cross claim are overruled. Meccia will be granted leave to file an amended Count IV, consistent with this opinion, within twenty-one days of entry of the order, if they be so advised. Berryman will file his responsive pleading within twenty-one days of entry of the order.