**Thomas Joseph WARD, Appellant,**

v.

**Ken CONNOR, Sr.; Thomas James Ward; Mary Ward; Marty Ward; Robert S. Mandelkorn; Eugenia Mandelkorn; Lyle Moiser; Lawrence V. Conroy; Joan Conroy; John Conroy; Mary Conroy; Mary Carol Williams; Alan Tate Wood; Dee Anderson; Father Marty O'Rourke; Ted Morgan; Rose Morgan, Appellees,**

**and**

**Maureen Winifred Ward; Arlene Doe; Ken Connor, Jr.; Phil Doe; John Doe; Richard Roe; Mary Roe; Judy Kimes; Reverend Dean; Marty Berg; Father Martin Conroy; Jeff Yeslein; Jack McConeghy; Betty McConeghy; Jo Munchouer and Sister Maria Victoria, Defendants.**

No. 80–1336.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1980.

Decided Aug. 10, 1981.

John E. Harrison, Norfolk, Va., for appellant.

R. Barrow Blackwell, Norfolk, Va. (Donnell P. Davis, Furniss, Davis & Rashkind, Norfolk, Va., on brief), for appellees.

Before HAYNSWORTH and FIELD, Senior Circuit Judges, and PHILLIPS, Circuit Judge.

FIELD, Senior Circuit Judge:

Upon this appeal we are asked to decide whether 42 U.S.C. § 1985(c) affords redress for injuries allegedly resulting from a private conspiracy actively engaged in interference with the plaintiff's religious beliefs.

Thomas Joseph Ward, a 28 year old member of the Unification Church, charged in his complaint that while en route to an airport to begin a trip from Virginia to New York, he was kidnapped, held captive, and subjected to physical and psychological abuse by his parents and others acting in concert with them during an attempt to "deprogram" him of his religious beliefs. Acting upon the defendants' 12(b)(6) motion, the district court dismissed three counts of the plaintiff's eight count complaint. Included in the counts dismissed was the one with which we are here con-

cerned in which Ward alleged that the defendants engaged in a conspiracy to deprive him of his civil rights. Jurisdiction for this count was invoked under § 1985(c).[1]

Expressing doubt that § 1985(c) was ever intended to reach private conspiracies motivated by religious, rather than racial animus, the district court concluded that, in any event, the defendants were motivated by parental concern for the plaintiff's well-being rather than any discriminatory bias, and dismissed the complaint. *Ward v. Connor*, 495 F.Supp. 434 (E.D.Va.1980).

In addressing the question, our starting point is, of course, *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), in which the Court abandoned the state action requirement announced in *Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), and held that § 1985(c) provides a remedy for injuries resulting from purely private, racially motivated conspiracies to deprive a citizen of the equal protection of the laws. In *Griffin*, a group of whites, acting under the mistaken belief that blacks traveling on interstate highways were civil rights workers, blocked their passage and assaulted them. The Court found that such conduct "lies so close to the core of the coverage intended by Congress that it is hard to conceive of wholly private conduct that would come within the statute if this does not". *Id.*, 403 U.S. at 103, 91 S.Ct. at 1799. Although conclud-

ing that § 1985(c) covers private conspiracies, the Court cautioned "[t]hat the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.*, at 101, 91 S.Ct. at 1798. To that end the Court stated

> The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. * * * The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action.

*Id.*, at 102, 91 S.Ct. at 1798.

 As we have noted, the principal question before us is whether a religious group which is the object of the discriminatory animus may be deemed a class falling within the ambit of § 1985(c).[2] The Griffin Court declined to decide "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under [§ 1985(c)]."[3] However, it did refer to the remarks of Senator Edmunds during the debate preceding the pas-

---

**1.** 42 U.S.C. § 1985(c), which is the descendant of § 2 of the Civil Rights Act of 1871 and was formerly codified as 42 U.S.C. § 1985(3), reads in pertinent part as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or depri-

vation, against any one or more of the conspirators.

**2.** A claim under § 1985(c) must embrace the following elements: (1) a conspiracy to go in disguise on the highway or on the premises of another; (2) for the purpose of depriving a person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy resulting in; (4) injury to the person or to property or deprivation of any of the rights or privileges of a citizen. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338. Unquestionably Ward's complaint satisfies elements (1), (3), and (4).

**3.** *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 footnote 9.

sage of the Civil Rights Act of 1871. In answer to an inquiry concerning the breadth of the Civil Rights legislation, Senator Edmunds stated:

> Certainly, referring to the "equal and impartial course of justice" mentioned in the second section of the third page. This obstruction of the equal and impartial course of justice, however, must under the provisions of all this bill, go so far as to deny and withhold from citizens of the United States that equality of protection in seeking justice which the Constitution of the United States gives them. We do not undertake in this bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or set of men against another to prevent one getting an indictment in the State courts against men for burning down his barn; but, if in a case like this, it should appear that this conspiracy was formed against this man because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, * * * then this section could reach it. Cong.Globe, 42d Congress, 1st Sess. 567 (1871).

In the ten years since *Griffin* was decided, the Court has not had occasion to consider a definitive extension of the protected classes. However, the lower federal courts have, almost without exception, extended the coverage of the statute to religious groups. *Marlowe v. Fisher Body*, 489 F.2d 1057 (6 Cir. 1973); *Action v. Gannon*, 450 F.2d 1227 (8 Cir. 1971); *Rankin v. Howard*, 457 F.Supp. 70 (D.Ariz.1978); *Baer v. Baer*, 450 F.Supp. 481 (N.D.Cal.1978). And those courts which have denied relief to nonsectarian classes have generally by way of dictum recognized that religious groups are entitled to its protection. *See Western Telecasters, Inc. v. California Federation of Labor*, 415 F.Supp. 30, 33 (S.D.Cal.1976);

*Arnold v. Tiffany*, 359 F.Supp. 1034, 1036 (C.D.Cal.1973); *aff'd on other grounds*, 487 F.2d 216 (9 Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). In the light of these cases and the legislative history, we think it reasonable to conclude that religious discrimination, being akin to invidious racial bias, falls within the ambit of § 1985(c), and that the plaintiff and other members of the Unification Church constitute a class which is entitled to invoke the statutory remedy.[4]

■ Having concluded that Ward's complaint satisfies the requisite elements of a § 1985(c) cause of action, it is, of course, necessary that we identify a source of congressional power to reach the alleged conspiracy. The *Griffin* Court found such power in § 2 of the Thirteenth Amendment as well as the right of interstate travel which the Court recognized was "among the rights and privileges of National citizenship." *Id.*, 403 U.S. at 106, 91 S.Ct. at 1800. Since Ward is not a member of the Negro race, congressional authority cannot be based on the Thirteenth Amendment. However, the complaint clearly charges that a purpose of the conspiracy was to prevent Ward from traveling from state to state and that the conspirators did, in fact, interfere with Ward's constitutional right,[5] and this is sufficient to support his cause of action. In dismissing the § 1985 count, the district court observed that the gravamen of the complaint was not the deprivation of the plaintiff's right to interstate travel, "but rather interference with his First Amendment rights of freedom of religious association." This may be true. Nevertheless, as we have noted, the complaint specifically alleges that interference with the plaintiff's right to travel was one of the objects of the conspiracy and the fact that the conspiracy had other objectives is immaterial.

---

4. The commentaries generally are in accord with this conclusion. *See, e. g.*, Note, *The Class-based Animus Requirement of 42 U.S.C. § 1985(c): A Suggested Approach*, 64 Minnesota Law Review 635 (1980).

5. Since we find congressional authority to reach the conspiracy under Ward's right of interstate travel, it is unnecessary for us to consider the troublesome question of congressional power under § 5 of the Fourteenth Amendment which confronted us in *Bellamy v. Mason's Stores, Inc.*, 508 F.2d 504 (4 Cir. 1974).

The district court also concluded that since the parents of the plaintiff were motivated to act by their concern for the well-being of their son, the requisite discriminatory class bias was absent. While we do not quarrel with the court's assumption in regard to such parental concern, the complaint sufficiently charges that the defendants were motivated to act as they did not only because they found the plaintiff's religious beliefs intolerable, but also because of their animosity towards the members of the Unification Church. This, in our opinion, stated a discriminatory motive sufficient to support a claim under the statute.

In the light of the foregoing, we have no alternative but to reverse the action of the district court in its dismissal of count 1 of the plaintiff's complaint.

REVERSED.