**ST. AGNES HOSPITAL OF the CITY OF BALTIMORE, INC.**

**v.**

**Frank A. RIDDICK, Jr., M.D. as Chairman of the Accreditation Council for Graduate Medical Education, an unincorporated association.**

Civ. No. HM86–3071.

United States District Court,
D. Maryland.

Aug. 31, 1987.

states that it cannot participate because of its religious philosophy.

Plaintiff's complaint sets forth eight different counts, but the gravamen of plaintiff's complaint is that the withdrawal of accreditation was improper, and impermissibly infringed plaintiff's constitutional right of religious freedom. On November 13, 1986, the court heard argument on plaintiff's motion for a preliminary injunction. Finding that the balance-of-hardships tipped in favor of the plaintiff, the court enjoined the defendant from withdrawing plaintiff's accreditation pending the outcome of this action. (*See* Court's Memorandum of November 14, 1986.)

Presently pending before the court is defendant's motion to dismiss all counts of the complaint. The court has considered the papers submitted by both parties, and heard the argument of counsel at a hearing on February 20, 1987, and is now prepared to rule. The defendant asks the court to treat the motion as one for summary judgment, but the plaintiff objects, stating that it has not conducted discovery, and therefore that summary judgment would be premature. The court agrees with the plaintiff that summary judgment would be premature at this time. However, as the defendant pointed out at the hearing, there are three issues ripe for decision without discovery, as they are purely legal questions: (1) whether the required "state action" is present; (2) whether religions are within the scope of protection of 42 U.S.C. § 1985(3); and (3) whether withdrawal of accreditation may constitute "disciplinary or other recriminatory action" within the meaning of Section 20–214 of the Maryland Code, Health-General. The court will deal with these issues now, and will reserve ruling on defendant's other arguments until discovery has been completed. At that point, the defendant may submit a motion for summary judgment, and the court will have adequate facts before it upon which to rule.

John G. Kruchko, Jay R. Fries, and Kathleen A. Talty, Towson, Md., for plaintiff.

John F. King and Anderson, Coe & King, Baltimore, Md., Douglas R. Carlson, Gary E. Dyal and Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Plaintiff, St. Agnes Hospital of the City of Baltimore, Inc. ("St. Agnes"), brings this action against defendant Frank A. Riddick, Jr., M.D., as Chairman of the Accreditation Council for Graduate Medical Education ("ACGME"). In June 1986, the ACGME withdrew accreditation from St. Agnes' residency training program in obstetrics and gynecology, citing a number of deficiencies in the program. Two of the areas in which deficiencies were noted were tubal surgery and family planning, both areas in which the plaintiff, a Roman Catholic hospital,

## I. STATE ACTION

In Counts 1, 2, 3, and 5, St. Agnes alleges that defendant conspired to violate St.

Agnes' civil rights, violated federal civil rights acts, and deprived St. Agnes of rights guaranteed by the first and fourteenth amendments to the United States Constitution. Defendant moves to dismiss these counts on the ground that there is no "state action." Plaintiff concedes that "state action" is a necessary prerequisite to these claims, but argues that the ACGME's actions constitute state action because the State of Maryland has *delegated* its authority to the ACGME. In addition, St. Agnes argues that Maryland has relinquished to the ACGME, a private entity, a "traditional state function", and thus that ACGME's actions are attributable to the state.

The fourteenth amendment prohibits "any state" from depriving any person of property without due process of law. Title 42 U.S.C. § 1983 requires that in order to be liable, one must be acting "under of color of any statute, ordinance, regulation, custom or usage." This has been treated as the same thing as "state action" under the fourteenth amendment. *United States v. Price,* 383 U.S. 787, 794, fn. 7, 86 S.Ct. 1152, 1157, fn. 7, 16 L.Ed.2d 267 (1966); *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 642, fn. 6 (4th Cir.1975). Thus, the analysis of whether or not "state action" exists here will be the same for all four of these counts.[1]

To determine whether "state action" exists, it is necessary to look first at the statutory scheme in Maryland for the licensing of physicians. In order to be licensed as a physician, an applicant must meet a number of requirements, including the successful completion of an examination given by the State Board of Medical Examiners ("Board"). *See* Maryland Code, Health Occupations §§ 14–305—14–306. In order to take the examination, an applicant must have received at least one year of postgraduate clinical training in an "approved training program." Code of Maryland Regulations, 10.32.01.04(A)(6). An "approved training program" is defined as

"a postgraduate clinical training program with standards equivalent to those established by the Accreditation Council on Graduate Medical Education ("ACGME") or its successor." 10.32.01.02(B)(4) Thus, in order to become a licensed physician in Maryland, a person must be trained in a residency program accredited by the ACGME.

Defendant argues that this statutory scheme is not enough to create "state action." Defendant asserts that the state regulations merely make reference to the ACGME in the context of licensure requirements applicable to prospective physicians, and that the state has nothing whatever to do with the process of accreditation itself.

The plaintiff, on the other hand, argues that the state has delegated a portion of its authority with respect to medical licensure to the defendant ACGME. Furthermore, plaintiff argues, the licensure of physicians is a function which has traditionally been performed by the state, and thus the ACGME is performing an exclusive state function by conducting an essential part of this licensing process.

■ The court believes that the defendant belittles the connection between the ACGME, the state, and the issues in this action. The state, through its statutes and regulations, has given to the ACGME the authority to determine which residency programs shall be accredited, and thus to determine, in part, how a person must be trained in order to qualify for a physician's license in the state of Maryland. The claims made by the plaintiff in this lawsuit are directly related to the ACGME's actions in this process. In essence, the state has decided that certain qualifications are required, but has given the authority to define those qualifications to the defendant. The nexus between the state's delegation of authority to the defendant, and the claims of the plaintiff, is direct.

---

**1.** Although § 1985(3), which is the basis for Count 1, does not by its own terms require "state action", it is required in this case since discrimination other than on the basis of race is actionable under § 1985(3) only when there is state action involved. *Bellamy v. Mason's Stores,* 508 F.2d 504 (4th Cir.1974).

In a letter to the court dated July 31, 1987, defendant cites two cases which it asserts stand for the proposition that accreditation decisions do not constitute state action. In *Medical Institute of Minnesota v. NATTS*, 817 F.2d 1310 (8th Cir.1987), the plaintiff was a private technical school which trained students for careers as medical and dental assistants. As long as the Institute was accredited, its students were eligible for federal financial aid. When the defendant accrediting association withdrew the Institute's accreditation, the Institute filed suit. The issue addressed by the court on appeal, however, was not the state action question posed in the instant case. Rather, the court had to determine whether the actions by a private organization, which affected individuals' eligibility for federal funds, constituted "state action." The court held that there was no state action in such situations, since the nexus between the government's actions and the defendant's actions was too attenuated. The defendant's actions involved issues of training medical assistants, while the government's concern was with the administration of financial aid.

In the instant case, the connection between the state and the defendant is direct: the state is specifically concerned with the licensing of physicians, and it is exactly with this same concern that the defendant is involved.

Likewise, the case of *Transport Careers, Inc. v. National Home Study Council*, 646 F.Supp. 1474 (N.D.Ind.1986) provides little guidance on the question presently before the court. In that case, the court held that the fact that accreditation may be a prerequisite to receiving state funding was not enough to establish state action.

The plaintiff cites *Golden Rule Insurance Co. v. Mathias*, 86 Ill.App.3d 323, 41 Ill.Dec. 888, 408 N.E.2d 310 (1980) in support of its position. *Golden Rule Insurance* involved a lawsuit brought by several plaintiffs against the Educational Testing Service ("ETS"), a private, non-profit corporation engaged in test development and administration. Defendant ETS, under contract with the state of Illinois, was responsible for developing, administering, and grading the examination used by the state for qualifying applicants for insurance agent or broker licenses. One of the questions before the court was whether ETS's involvement in the testing constituted "state action" for purposes of 42 U.S.C. § 1983 and the fourteenth amendment. The court analyzed the relationship between the state licensing procedures and the actions by ETS, and determined that state action existed.

Defendant attempts to distinguish *Golden Rule Insurance* from the instant case by arguing that the state in *Golden Rule Insurance* had been much more intertwined in the activities of the private defendant than the state here is with defendant ACGME. However, it is clear from a review of the various cases cited by each side that no hard and fast rule exists to apply in every case. Rather, a court must consider how close a connection exists between the state and the private actor, and how close a connection exists between the state's involvement and the alleged injuries to the plaintiff.

▮ Taking these factors into account, the court finds that "state action" exists in this case. The state of Maryland is responsible for the licensing of physicians, and has been so since at least 1902. *See Reddick v. State*, 213 Md. 18, 23, 130 A.2d 762 (in 1902, state legislature names two licensing boards with authority to issue licenses to practice medicine in the state), *cert. denied*, 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957). In order to determine who is qualified for a license, the state has established requirements, including the requirement that the applicant be trained in a postgraduate program accredited by the ACGME. The connection between the state function (licensing of physicians) is directly related to the ACGME's actions (accrediting programs involved in the licensing process). The connection between the injuries complained of by the plaintiff and the ACGME's actions are likewise direct. It is clear that if the ACGME or a similar organization did not exist, the state would find it necessary to perform the ac-

crediting duties currently conducted by the ACGME. The fact that the state has chosen to delegate this aspect of its licensing responsibility to a private organization does not mean that state action is no longer involved.

## II. SCOPE OF PROTECTION OF § 1985(3)

Count 1 of plaintiff's complaint is brought pursuant to 42 U.S.C. § 1985(3). In it, plaintiff alleges that the ACGME, its Residency Review Committee, and their respective members were engaged in a conspiracy to deprive St. Agnes of the right of free exercise of religion guaranteed by the Constitution. Plaintiff further alleges that the conspiracy was motivated by an "animus towards the Hospital because of its religious philosophy and affiliation." *See* Complaint, ¶¶ 28–30.

■ Section 1985(3) is intended to redress only conspiracies motivated by class-based, invidiously discriminatory animus. *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (hereinafter "*Scott*"). The exact scope of protection offered by § 1985(3) is somewhat in question, however, since the Supreme Court has not explicitly listed all groups which are to be considered protected by the statute. So far, the Supreme Court has only recognized blacks as a group protected under § 1985(3) from private conspiracies. On the other hand, the Supreme Court has not expressly limited protection under the statute to blacks, and lower courts have found a number of other classes to be within the scope of § 1985(3)'s protection.

■ In this Circuit, the Court of Appeals has held that a religious group which is the object of discriminatory animus may be deemed a class falling within the ambit of § 1985(3). *Ward v. Connor*, 657 F.2d 45 (4th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). In *Ward*, the court found religious discrimination to be akin to racial discrimination, and

to be the type of discrimination against which there should be protection. In spite of the holding in *Ward*, defendant argues that plaintiff, as a "Roman Catholic affiliated hospital," is not a member of a protected class.[2] Defendant argues that *Ward v. Connor* is no longer good law because of the Supreme Court's ruling in *Scott, supra*, and the Fourth Circuit's recent holding in *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155 (4th Cir. 1985).

In *Scott*, the Supreme Court held that § 1985(3) does not reach conspiracies motivated by bias towards others on account of their economic views. In reaching a decision that nonunion laborers were not a "protected class", the Court noted that the predominant purpose of § 1985(3) was to combat the prevalent animus against blacks which existed when the statute was passed. However, the Court stated that it withheld judgment on whether § 1985(3) went any further than its central concern with protecting blacks. 463 U.S. at 837, 103 S.Ct. at 3360. In addition, in spite of the fact that numerous lower court decisions have expanded protection to classes other than blacks, the Supreme Court in *Scott* did not take the opportunity to explicitly limit the scope of protection to blacks.

In *Harrison, supra*, the Court of Appeals for the Fourth Circuit held that Republicans are not a protected class for purposes of § 1985(3). The court noted that the Supreme Court in *Scott* exhibited a "noticeable lack of enthusiasm" for expanding the coverage of § 1985(3), and thus, refused to expand it to cover Republicans, as urged to by the plaintiffs. However, it did not overrule its earlier holding in *Ward*, and did not address the issue of religious classes.

Having reviewed these authorities, the court disagrees with defendant's assertion that the plaintiff is not a member of a class protected by § 1985(3). The court does not find that these cases overrule *Ward v.*

2. The court believes that the defendant characterizes the issue too narrowly; the court finds the "class" at issue to be a "religious group," rather than the class of "Roman Catholic affiliated hospitals," as suggested by the defendant.

*Connor,* and the court finds that *Ward v. Connor* is still the law in this Circuit.

## III. SECTION 20–214

In Count 4 of the complaint, St. Agnes alleges that defendant's withdrawal of accreditation is a direct violation of Maryland Code, Health-General § 20–214(b). Section 20–214(b) provides that a hospital cannot be required to permit abortions or sterilization procedures to be performed within its facility, and the refusal to permit these procedures may not be grounds for disciplinary or other recriminatory action by the State or any person.

Defendant moves to dismiss this count for failing to state a claim upon which relief can be granted. Specifically, defendant argues that the withdrawal of accreditation was not a "disciplinary or other recriminatory" action, but rather resulted from an academic decision which was based upon the application of professional review standards and procedures.

■ The court finds merit in defendant's distinction between "recriminatory actions" and "academic decisions." However, the court also finds that the plaintiff has made sufficient allegations to survive a motion to dismiss. The court could find no cases construing this section of the Maryland Code; however, the court is aware that the issue of abortion is an emotionally and morally charged topic upon which reasonable people disagree, and believes that this section of the code is to prevent a hospital from being punished if it refuses, for moral or philosophical reasons, to perform such procedures within its facilities. Retaliation for refusing to perform such procedures can take many forms, including the withdrawal of accreditation. Therefore, the court finds that the plaintiff, who has alleged accreditation was withdrawn because of its refusal to permit sterilizations and abortions, has stated a cause of action. The court also believes, however, that the scope of the section is limited to those situations in which the negative consequence complained about is *directly* related to the refusal to permit these procedures within its facilities.

■ Thus, in the instant case, if it is shown that the withdrawal of accreditation was due to factors other than St. Agnes' refusal to permit sterilization and abortions to be performed within its facilities, plaintiff's claim will fail. Further, the court finds that this section does not permit St. Agnes to refuse to permit its residents to be trained in these procedures, if such training can be conducted outside of St. Agnes, or if it can be conducted without the actual procedures themselves being performed in the hospital.

For the foregoing reasons, it is this 31st day of August 1987, by the United States District Court for the District of Maryland,

ORDERED:

(1) that defendant's motion to dismiss be, and the same hereby is, *Denied;* and

(2) that the Clerk of the Court shall mail a copy of this memorandum and order to the parties.